Thane Charman
2270 Boundary St
San Diego, CA 92104
Telephone:  800-673-4384
Email: OBEY.TCPA@GMAIL.COM

Plaintiff, Pro Se

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individual<br>            Plaintiff,<br><br>v.<br><br>CALIFORNIA CHECK CASHING STORES, LLC, dba Speedy Cash, a California Limited Liability Company, and LEADSMARKET.COM, LLC, a Nevada Limited Liability Company<br><br>            Defendants. | Civil Case No.: 3:24-cv-00695-BAS-MMP<br><br>FIRST AMENDED COMPLAINT<br><br>1.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]<br>2.  NEGLIGENT VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C §227 (b)]<br>3.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>4.  NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]<br>5.  VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ]47 C.F.R. § 64.1200(d)}<br><br>JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT          1

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW PLAINTIFF THANE CHARMAN with his First Amended Complaint against CALIFORNIA CHECK CASHING STORES, LLC and LEADSMARKET.COM, LLC, and alleges based on personal knowledge, and information and belief, as follows:

**PARTIES**

1.     The Plaintiff is THANE CHARMAN ("Plaintiff") a natural person, resident of the Southern District of California, and was present in California for all automated text messages, in this case in San Diego County, California.

2.     Defendant California Check Cashing Stores, LLC ("CCCS") is a "person" as defined by 47 U.S.A 153 (39).

3.     Defendant CALIFORNIA CHECK CASHING STORES, LLC is a Limited Liability Company organized and existing under the laws of Delaware

4.     Defendant California Check Cashing Stores, LLC's principal address is 5165 Emerald Parkway, Suite 100, Dublin, OH 43017, and can be served via CSC - Lawyers Incorporating Service at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

5.     Defendant LEADSMARKET.COM, LLC ("Leadsmarket"), is a Nevada Limited Liability Company and can be served via registered agent Corporate Creations Network Inc., 8275 South Eastern Avenue, #200, Las Vegas, NA 89123.

6.      Defendant Leadsmarket is a "person" as defined by 47 U.S.A 153 (39).

7.     Defendants CCCS and Leadsmarket are hereinafter referred to as "Defendants."

## JURISDICTION AND VENUE

8.     **Jurisdiction**.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.     **Personal Jurisdiction.**  This Court has personal specific jurisdiction over Defendants because Defendants purposefully availed themselves to the State of California and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with California and the litigation. Defendants purposefully sent calls into California despite having no business relationship with Plaintiff.

a.  Defendants target California when marketing loan products and services and regularly conduct business in this District, including via telephone solicitation.

b.  Defendant Leadsmarket purposefully sent phone calls to Plaintiff's California area phone number with area code 619 to generate leads for Defendant CCCS.

c.  Defendant CCCS directed that the calls be sent to California and purposefully directed that California residents be targeted with the solicitation calls.

d.  The purposeful calls to California injured Plaintiff in California, creating a

causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

10.    **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated text messages for the sale of goods and services directed at California residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

11.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA makes it unlawful "to initiate any telephone call to any residential

FIRST AMENDED COMPLAINT          4

telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

(2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular: [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party

telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (Internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

24.     At all times material hereto Plaintiff's number 619-4x5-x2x5 was successfully registered on the Do-Not-Call Registry.

25. Plaintiff has been the owner and regular user of phone number 619-4x5-x2x5 since 2019.

26. Plaintiff's number 619-4x5-x2x5 was personally registered on the Do-Not-Call Registry in November 2019, and was on the National DNC registry at all times

relevant to this Complaint

27.    Defendants are engaged in the business of marketing and fulfilling consumer loans in the subprime market.

28.    Defendants routinely violate the TCPA as part of their business and knowingly and willfully commit TCPA violations.

29.    Defendant Leadsmarket is a company that solicits consumers for loan products and refers the leads to companies like Defendant CCCS.

30.    The text messages, in this case, were directed to "Pamela." Plaintiff does not know anybody named Pamela, and no Pamela has used Plaintiff's phone during the five-year period Plaintiff has owned the phone number at issue in this instant action.

31.    Through information and belief, Defendants' text messages were randomly directed to a "Pamela" to make the messages appear more personal and increase the likelihood of obtaining a response.

32.    On April 12, 2021, Plaintiff received the first of at least ninety-two (92) unauthorized text messages soliciting subprime loans.

33.    Between April 12, 2021, and December 5, 2022, Plaintiff received a total of ninety-two (92) loan solicitation text messages as detailed in Table A.

TABLE A

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 4/12/21 | 6:28 AM | 385-398- | TodaysFastLoan - Pamela |

| | | | | |
|---|---|---|---|---|
| | | | 9363 | |
| **2.** | 4/15/21 | 8:29 AM | 224-298-0997 | CashLoanSameDay - Pamela |
| **3.** | 4/16/21 | 6:50 AM | 810-425-5381 | TheCashLoanSameDay - Pamela |
| **4.** | 4/19/21 | 6:15 AM | 806-602-0012 | CashLoansUSA - Pamela |
| **5.** | 4/20/21 | 6:43 AM | 724-538-7171 | OnlineCashLoansUS - Pamela |
| **6.** | 4/21/21 | 6:30 AM | 567-364-5358 | WednesdayQuickCashLoan - Pamela |
| **7.** | 4/22/21 | 6:01 AM | 984-224-6307 | FastCashLoanSameDay - Pamela |
| **8.** | 4/23/21 | 8:50 AM | 352-656-6562 | FridayFastMoneyLoan - Pamela |
| **9.** | 4/26/21 | 7:24 AM | 833-964-4272 | AprilFastCashLoan - Pamela |
| **10.** | 4/28/21 | 8:02 AM | 833-547-1820 | YourQuickCashLoan - Pamela |
| **11.** | 4/30/21 | 6:21 AM | 833-720- | FastCashToday - Pamela |

FIRST AMENDED COMPLAINT          9

| | | | 3036 | |
|---|---|---|---|---|
| **12.** | 5/3/21 | 12:40 PM | 833-252-4934 | truloocash.com - Pamela |
| **13.** | 5/4/21 | 10:09 AM | 833-252-7113 | Yakimbucash - Pamela |
| **14.** | 5/6/21 | 11:20 AM | 833-524-2345 | MegaFastLending - Pamela |
| **15.** | 5/11/21 | 12:09 PM | 833-532-2043 | EasyLendingClarity |
| **16.** | 5/12/21 | 6:42 AM | 833-461-2177 | EasyLendingPartner |
| **17.** | 5/19/21 | 12:23 PM | 833-812-0905 | GoldStarLend.com - Pamela |
| **18.** | 5/20/21 | 6:40 AM | 833-474-1674 | PrimeClickLends.com - Pamela |
| **19.** | 5/31/21 | 11:29 AM | 202-977-4876 | ExclusiveMemorialDayLoans |
| **20.** | 6/1/21 | 9:28 AM | 720-823-3640 | PrimeLoansNow -  Pamela |
| **21.** | 6/4/21 | 1:33 PM | 209-798- | FridaySpeedyLoans - Pamela |

FIRST AMENDED COMPLAINT            10

| | | | 2752 | |
|---|---|---|---|---|
| **22.** | 6/18/21 | 11:41 AM | 209-798-4097 | SpecialLoanHub - Pamela |
| **23.** | 6/22/21 | 12:56 PM | 775-251-6730 | ImmediateAccessLoans - Pamela |
| **24.** | 6/22/21 | 12:56 PM | 775-261-6335 | QuickLendingPlace -Pamela |
| **25.** | 7/2/21 | 10:38 AM | 775-743-0584 | SecureFridayLending - Pamela |
| **26.** | 7/19/21 | 11:06 AM | 775-330-0930 | MondaySecureLending - Pamela |
| **27.** | 7/20/21 | 7:30 AM | 775-599-0263 | TuesdaySafeLending - Pamela |
| **28.** | 7/22/21 | 11:00 AM | 775-667-1785 | Limit4518.23 - Pamela |
| **29.** | 7/22/21 | 11:53 AM | 775-667-1511 | Limit6686.14 - Pamela |
| **30.** | 7/23/21 | 7:27 AM | 775-667-1289 | YourAmount Ready 3025.70 - Pamela |
| **31.** | 7/26/21 | 11:17 AM | 775-667- | Daily Limit: 4489.16 - Pamela |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  | 6906 |  |
| **32.** | 7/27/21 | 8:07 AM | 775-719-1110 | Updated Limit: 3193.28 - Pamela |
| **33.** | 7/28/21 | 10:04 AM | 775-719-5552 | After Review...2529.12 - Pamela |
| **34.** | 7/29/21 | 10:11 AM | 775-766-3207 | After Review...3652.26 - Pamela |
| **35.** | 7/30/21 | 9:15 AM | 775-860-2024 | After Review...3615.94 - Pamela |
| **36.** | 8/13/21 | 7:23 AM | 775-514-2231 | Last Opportunity... 4756.28 - Pamela |
| **37.** | 8/16/21 | 1:27 PM | 775-535-5067 | 3195.68 Accessible Today - Pamela |
| **38.** | 8/17/21 | 9:42 AM | 775-599-5172 | 3951.31 Available - Pamela |
| **39.** | 12/30/21 | 11:27 AM | 865-352-9385 | Your CashAdvance - Pamela |
| **40.** | 2/2/22 | 9:41 AM | 747-488-0765 | TheQuickFundsCenter - Pamela |
| **41.** | 2/4/22 | 11:20 AM | 213-221- | USAFastCashExpress - Pamela |

| | | | | |
|---|---|---|---|---|
| | | | 5490 | |
| **42.** | 2/8/22 | 12:06 PM | 773-410-7524 | Funds are ready - Pamela |
| **43.** | 2/11/22 | 11:18 AM | 469-803-0430 | FundsReady - Pamela |
| **44.** | 2/16/22 | 11:18 AM | 689-242-5972 | samedayfundingsource.com - Pamela |
| **45.** | 2/18/22 | 7:41 AM | 818-619-8467 | receiveyourfundstoday.com - Pamela |
| **46.** | 3/8/22 | 9:24 AM | 915-279-0990 | myfundsfortoday.com - Pamela |
| **47.** | 3/22/22 | 8:48 AM | 725-257-5570 | AdvanceApprovedSite - Pamela |
| **48.** | 4/5/22 | 12:28 PM | 210-264-9817 | Advanced-Approved - Pamela |
| **49.** | 4/27/22 | 7:08 AM | 346-462-9399 | lending group - Pamela |
| **50.** | 4/29/22 | 8:28 AM | 667-310-9948 | Lending Source - Pamela |
| **51.** | 5/3/22 | 7:36 AM | 830-327- | FundsAvailable - Pamela |

FIRST AMENDED COMPLAINT          13

| | | | 9397 | |
|---|---|---|---|---|
| **52.** | 5/25/22 | 8:20 AM | 279-278-3308 | TheAdvanceApprovedSite - Pamela |
| **53.** | 6/6/22 | 10:33 AM | 832-283-7694 | TheADVANCEAPPR0VEDPLACE - Pamela |
| **54.** | 6/9/22 | 2:21 PM | 929-620-7276 | TheAdvance-Appr0vedPIace - Pamela |
| **55.** | 6/13/22 | 8:07 AM | 773-524-7934 | TheAdvanceAppr0vedPIace - Pamela |
| **56.** | 6/16/22 | 7:45 AM | 214-218-5595 | TheAdvanc3Appr0v3d - Pamela |
| **57.** | 6/20/22 | 7:54 AM | 980-361-4725 | Ad-vanc3App-r0v3d  - Pamela |
| **58.** | 6/24/22 | 8:26 AM | 754-209-5472 | Th3(A)ddvance(A)ppr0v3ddPIac3 - Pamela |
| **59.** | 6/29/22 | 7:39 AM | 470-447-8445 | (Fun)ds are Ready - Pamela |
| **60.** | 7/6/22 | 9:27 AM | 661-503-8989 | City-WideIoans - Pamela |
| **61.** | 7/18/22 | 7:02 AM | 619-455- | City-Wide-Ioans Pamela |

FIRST AMENDED COMPLAINT          14

| | | | | |
|---|---|---|---|---|
| | | | 1235 | |
| **62.** | 7/18/22 | 7:02 AM | 929-258-1891 | City-Wide-Ioans Pamela |
| **63.** | 7/20/22 | 9:53 AM | 281-210-8226 | CityWlDEL0ANS - Pamela |
| **64.** | 7/20/22 | 9:53 AM | 281-210-8226 | CityWlDEL0ANS Pamela |
| **65.** | 7/25/22 | 6:40 AM | 213-648-3624 | CityWideIoans - Pamela |
| **66.** | 7/25/22 | 6:40 AM | 213-648-3624 | CityWideIoans - Pamela |
| **67.** | 8/1/22 | 7:09 AM | 347-272-6318 | City Wide-Ioans - Pamela |
| **68.** | 8/5/22 | 8:20 AM | 408-690-5807 | FlNDFUNDSFAST - Pamela |
| **69.** | 8/5/22 | 8:20 AM | 408-690-5807 | FlNDFUNDSFAST - Pamela |
| **70.** | 8/8/22 | 5:47 AM | 706-394-0768 | City-Wide - Pamela |
| **71.** | 8/8/22 | 5:47 AM | 706-394- | City-Wide Pamela |

FIRST AMENDED COMPLAINT          15

| | | | 0768 | |
|---|---|---|---|---|
| **72.** | 8/15/22 | 7:02 AM | 410-320-1330 | AdvanceAppr0ved - Pamela |
| **73.** | 8/15/22 | 7:02 AM | 410-320-1330 | AdvanceAppr0ved-here - Pamela |
| **74.** | 8/19/22 | 7:04 AM | 219-577-5410 | City WideIoans - Pamela |
| **75.** | 8/22/22 | 7:21 AM | 346-464-0735 | City Wide - Pamela |
| **76.** | 9/2/22 | 6:37 AM | 629-261-1231 | City-wide - Pamela |
| **77.** | 9/12/22 | 6:50 AM | 470-860-1809 | Citywide - Pamela |
| **78.** | 9/21/22 | 8:48 AM | 832-812-7965 | Citywide - Pamela |
| **79.** | 9/23/22 | 9:23 AM | 602-566-3285 | up to 32O5 ready - Pamela |
| **80.** | 9/30/22 | 8:14 AM | 346-558-3707 | Citywide - Pamela |
| **81.** | 10/3/22 | 7:07 AM | 725-577- | Citywide - Pamela |

FIRST AMENDED COMPLAINT          16

|  |  |  | 4164 |  |
|---|---|---|---|---|
| **82.** | 10/5/22 | 8:41 AM | 470-883-2621 | Citywide - Pamela |
| **83.** | 10/7/22 | 10:32 AM | 470-939-3923 | Citywide - Pamela |
| **84.** | 10/19/22 | 7:49 AM | 267-934-6924 | Citywide - Pamela |
| **85.** | 10/26/22 | 8:21 AM | 945-216-9482 | Citywide - Pamela |
| **86.** | 11/11/22 | 3:47 PM | 414-788-4643 | 3O5O.OO ready - Pamela |
| **87.** | 11/14/22 | 9:05 AM | 202-817-8315 | 3O85.OO waiting - Pamela |
| **88.** | 11/16/22 | 11:02 AM | 540-295-2598 | 3O85.oo ready - Pamela |
| **89.** | 11/21/22 | 9:59 AM | 619-214-7802 | 28O5.oo today - Pamela |
| **90.** | 11/30/22 | 11:04 AM | 224-933-2567 | Citywide - Pamela |
| **91.** | 12/2/22 | 10:44 AM | 364-203- | Citywide - Pamela |

FIRST AMENDED COMPLAINT          17

| | | | 1870 | |
|---|---|---|---|---|
| **92.** | 12/5/22 | 1:51 PM | 470-983-0400 | Citywide - Pamela |

34.     Each of the text messages at issue in this Complaint were either directed "Pamela" and/or contained a link to https://citywideloan.com.

35.     https://citywideloan.com is one of the websites that advertised loans to "Pamela" via text messages to Plaintiff.

36.     On February 27, 2024, Plaintiff logged onto the website https://citywideloan.com in an attempt to uncover who was behind the repeated loan solicitations. Plaintiff submitted an application at https://citywideloan.com for the sole purpose of uncovering the companies behind the text messages.

37.     On February 28, 2024, Plaintiff received an email from linda@fundflowfast.com as a direct result of Plaintiff's application at https://citywideloan.com. The email stated, "Yesterday, you took an important step towards securing the financial assistance you need, and we're here to ensure that your journey towards a solution is smooth and straightforward."

38.     The email in paragraph 37 contained a hyperlink embedded in the text, "click here to complete the quick verification form."

39.     Plaintiff clicked the link in paragraph 38 completed the quick verification form and

was immediately directed to https://www.speedycash.com. Plaintiff continued the application process and was offered a loan.

40.     Defendant CCCS owns the website https://www.speedycash.com.

41.     The website https://citywideloan.com is owned and operated by Defendant Leadsmarket.com.

42.     On or about July 22, 2024, Plaintiff sent a subpoena to namecheap.com requesting ownership information of the website https://citywideloan.com.

43.     On or about August 14, 2024, Plaintiff received a response from namecheap.com that indicated the website https://citywideloan.com was owned by Customer Acquisition LLC.

44.     On or about August 14, 2024, Plaintiff performed a Google search of the terms "Customer Acquisition LLC" and "Saint Kitts." This search returned the webpage "https://api.leadsmarket.com."

45.     The website https://api.leadsmarket.com stated, "api.leadsmarket.com is owned and operated by Customer Acquisition LLC, a Saint Kitts and Nevis limited liability company."

46.     Leadsmarket.com, LLC is registered in Nevada as a domestic limited liability company managed by MMF Group LLC.

47.     MMF Group LLC is the parent company of LeadsMarket.com, LLC, as certified in the corporate disclosure statement Leadsmarket.com, LLC submitted in case number

FIRST AMENDED COMPLAINT          19

2:19-cv-05975-ODW-AGR.

48.     The subpoena response returned by namecheap.com stated that Mr. Maksym Holovchenko ("Holovchenko") paid for the domain registration with a credit card in his name.

49.     Mr. Holovchenko is listed as one of the managers of Leadsmarket.com, LLC at https://search.sunbiz.org when a search for the registration of Leadmarket.com LLC is performed.

50.     Plaintiff did not have a preexisting relationship with Defendants, had never been a customer of Defendants, and had never applied for any loans, products, or services through Defendants.

51.     Plaintiff did not consent to any of the text messages.

52.     Each of the text messages was an advertisement of subprime loans.

53.     Plaintiff's phone number had no reason to be in any database controlled by Defendants as Defendants had no previous relationship with Plaintiff.

54.     Plaintiff infers an ATDS was used because:

    a.  Plaintiff was never a customer of Defendants and Defendants did not have a legitimate reason to have Plaintiff's phone number on any list, or database, from which Plaintiff's phone number would have been sent text messages.

    b.  Random of sequential generation explains how Defendants obtained and texted Plaintiff's number, considering Plaintiff did not give it to Defendants,

FIRST AMENDED COMPLAINT          20

or have a relationship with Defendants, or otherwise consent to the text messages.

c. Had Defendants obtained Plaintiff's number from a pre-existing list rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry's and Plaintiff's number would have been removed.

d. The text messages came from numerous different area codes.

e. The text messages were standardized, impersonal, contained identical spelling, and were sent from numerous different phone numbers.

f. Defendant, on numerous occasions, sent text messages to Plaintiff within hours from different phone numbers and area codes.

55. Defendants placed multiple text messages to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

56. Defendants knew or should have known that its conduct would violate the TCPA and its regulations because Plaintiff has been on the National Do Not Call Registry since 2019. Plaintiff's Cell Phone is a Residential Phone.

57. Plaintiff did not provide his express prior consent to receive the text messages.

58. No emergency necessitated none of the alleged illegal automated text messages.

59. Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing text messages consumed part of this capacity.

VICARIOUS LIABLITY OF CCCS

60.     CCCS is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Leadsmarket.  In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

61.     CCCs markets subprime loans through direct telephone solicitation by its hired telemarketer Leadsmarket, who acts on their behalf.  Leadsmarket refers potential clients for CCCS and CCCs accepts those leads with full knowledge the text message that contacted the customers violated the TCPA.

62.     Leadsmarket made the text messages on behalf of CCCS with the actual knowledge and authority of CCCS.

63.     CCCS directs, controls, authorizes and pays Leadsmarket to generate leads for subprime loans through telephone solicitation.  Moreover, they require, authorize, or at least permit Leadsmarket's telemarketers to solicit explicitly for subprime loans.

64.     CCCS set the criteria for qualifying leads, which Leadsmarket must follow, and Leadsmarket transfers leads qualified on those criteria exclusively to CCCS.  Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

65.     On information and belief, CCCS, wrote or at least approved the text message scripts Leadsmarket uses when qualifying leads for CCCS.

66.     CCCS maintained interim control over Leadsmarket by controlling how, and under what circumstances, they would accept clients from Leadsmarket.

67.     Leadsmarket's telemarketers are CCCS's associates and do nothing to disturb the impression that Leadsmarket's telemarketers work for and speak and act on behalf of CCCS.

68.     Leadsmarket acting with actual and implied authority, made the prohibited text messages, and qualified Plaintiff according to CCCS's criteria

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

69.     Defendant's automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

70.     Defendant's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

71.     Defendant's automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

72.     Defendants have been harmed, injured, and damaged by the text messages including, but not limited to, reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's cell phone is a residential number

73.     The text messages were to Plaintiff's cellular phone ending 619-4x5-x2x5 which is

Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

<u>**COUNT ONE:**</u>
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing without Prior Express Written Consent**
**(Against All Defendants)**

74.    Plaintiff incorporates the preceding paragraphs 1-73 as if fully set forth herein.

75.    Defendants and/or their agents placed automated text messages to Plaintiff's cellular telephone.

76.    Plaintiff never consented to receive automated text messages from Defendants. Plaintiff has had no relationship with Defendants.

77.    Defendant's automated text messages were made for purposes of advertising and marketing their goods and services.  These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

78.    As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful text message campaigns.

79. Not only did Defendants make these violating automated text messages, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

80. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

81. Plaintiff incorporates the preceding paragraphs 1-73 as if fully set forth herein.

82. The foregoing acts and omissions of Defendants  and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

83. Plaintiff was statutorily damaged at least ninety-two (92) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the automated text messages described above, in the amount of $500 per automated text message.

84. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

85.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### COUNT THREE:
### Telemarketing without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

86.    Plaintiff incorporates the preceding paragraphs 1-73 as if fully set forth herein.

87.    The foregoing acts and omissions of Defendants  and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

88.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c) (5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

FIRST AMENDED COMPLAINT          26

89.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff THANE CHARMAN prays for judgment against the Defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violates the TCPA and California state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for ninety-two (92) automated text messages.

E.     An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for ninety-two (92) solicitation text messages.

F.     An award to Mr. Charman of damages, as allowed by law under the TCPA;

G.     An award to Mr. Charman of interest, costs, and attorneys' fees, as allowed by law and equity

FIRST AMENDED COMPLAINT          27

H.      Such further relief as the Court deems necessary, just, and proper.

Dated: September 16, 2024          Respectfully submitted,


By:  /s/ Thane charman

     THANE CHARMAN
     *Plaintiff, Pro Se*